Davis, J.
The defendant in error and one Bennett were inmates of the Champaign county infirmary. In Champaign county it was, under the provisions of the county local option statute, unlawful for any person, personally or by agent, to sell, give away or furnish intoxicating liquors to be used as a beverage. Bennett gave money to the defendant for the purpose of going into an adjoining county, in which the local option law was not then operative, to purchase for him, Bennett, a quart of whiskey to be used by him as a beverage. The defendant did go into the other county, purchased the whiskey, returned with it to Champaign county, delivered it to Bennett, and it was there consumed by both Bennett and the defendant. The defendant was indicted and tried in Champaign county, on the charge of furnishing intoxicating liquor to be used as a beverage.
*340 On the trial, the court charged the jury, in substance, that it was not a violation of the statute for a person in a “dry” county to go into a “wet” county and purchase liquor in any quantity for his own use, to be used as a beverage; and that such a person may, under this statute, not only go himself into a “wet” county and purchase intoxicating liquor in any quantity, to be used as a beverage by himself in a “dry” county, but that he may do so by another, whom he has, in good faith, constituted his agent for that purpose.
The prosecuting attorney excepted to the charge, and although the defendant was found guilty by the jury, and was sentenced by the court, the prosecuting attorney has brought the case here, as provided by Revised Statutes, Sections 7305, 7306, 7307, 7308, for an answer to the sole questio'n, as stated by himself: “Can a person in dry territory receive money from another, and go into wet territory, purchase intoxicating liquors with the money, and deliver it to the person who furnishes the money, to be used by him as a beverage, and not be guilty of furnishing as the term is used in this statute?”
The prosecuting attorney argues for a negative answer to this question; and his argument, in brief, is this: that the word “furnish” in its ordinary and generally accepted meaning signifies to “provide” or “supply.” Yet if we substitute either of these alleged equivalent words for the one used in the statute, the application of the statute to the facts of this case is not made any clearer than when we consider it with the legislature’s own chosen word, “furnish.” In fact, the *341 abstract meaning ot words rarely affords decisive aid in determining the construction of a document or a statute. When attempting to arrive at the meaning and specific intent of a given phrase or sentence, we are generally obliged to consider words in their concrete use, having regard to the general purpose which the draftsman had in view, together with any other circumstances which may aid us in attaining his mental point of view.
Now in the study of this statute (99 O L., 35-38), and especially of its title and Section 2, which is directly under review in this proceeding, it is very clear that it is aimed at the repression of “the evils resulting from the traffic in intoxicating liquors,” and the punishment of dealers conducting such traffic. The significant language of Section 2 is as follows: “Whoever * * * violates any of the provisions of this act or. in any manner directly or indirectly, sells, furnishes, or gives away or otherwise deals in any intoxicating liquors as a beverage,” etc. The statute seeks to prohibit the traffic, or dealing, in intoxicating liquors in counties in which a majority of the electors have voted “in favor of prohibiting the sale of intoxicating liquors;” and therefore it provides that not only those who sell intoxicating liquors, but also those who furnish, give away, or otherwise deal in them in evasion of the law against the sale of liquors, shall likewise be guilty of a misdemeanor. This was the construction, and no more, which was given to the word “furnish” in State v. Munson, 25 Ohio St., 381; State v. Freeman, 27 Vt., 520; *342 and People v. Neumann, 85 Mich., 98, cited by the prosecuting attorney.
For the foregoing reasons we are unable to accept the construction of the statute, which is claimed, on the part of the state to justify its contention that the charge of the court in this case was erroneous; and we may add a few other considerations leading to the same conclusion.
Admittedly Bennett could have gone in person to another county where the traffic in intoxicating liquors was not prohibited, and there could have bought liquors for his own use in any quantitj'- and could have transported them to the county of his residence, where the traffic was prohibited, and could have there consumed them. We frankly confess that we are entirely unable to understand why one may not lawfully do by the agency of another, that which he may lawfully do himself. The prosecuting attorney contends that the maxim, “Qui facit per alium, facit per se/ cannot apply in criminal law. Why not, in a case like this? There can be no aiders or abettors where there is no crime. When the liquor was purchased and paid for, in a place where the traffic was not prohibited, it thereupon became Bennett’s property. The defendant did not, and could not, sell or give it to Bennett, for it was not his to sell or give away. For the defendant to carry and deliver to Bennett his own, was not “furnishing” it to him. • If it be conceded that the mere delivery to the purchaser under such circumstances constitutes “furnishing” within the meaning of the statute, then one who has in his house, in “dry” territory, liquor which he has lawfully *343 obtained, makes his servant or member of his family liable to indictment under this statute, whenever in obedience to his request some of it is brought to the owner. In the absence' of a clear expression to that effect, we are not willing to adopt such an extreme construction.

Exceptions overruled.

Summers, C. J., Crew, Spear, Shauck and Price, JJ., concur.